470 So.2d 257 (1985)
GULF SOUTH BANK AND TRUST COMPANY
v.
MARSH BUGGIES, INC., et al.
No. CA-2869.
Court of Appeal of Louisiana, Fourth Circuit.
May 8, 1985.
Thomas R. Blum, Thomas B. Constantine, Simon, Peragine, Smith & Redfearn, New Orleans, for petitioner-appellee Gulf South Bank and Trust Co.
Nathan Greenberg, Greenberg & Dallam, Gretna, for defendant-appellant Marsh Buggies, Inc., et al.
Before GULOTTA, CIACCIO and KLEES, JJ.
KLEES, Judge.
In this appeal, we are presented with the issue of whether or not the trial court erred in granting a summary judgment in favor of plaintiff, Gulf South Bank & Trust Company, and against defendant, Marsh Buggies, Inc. We affirm the trial court judgment.
Gulf South Bank & Trust Company commenced this action against Marsh Buggies, Inc. and Rodrigue Insurance Services, Inc., worker's compensation insurer of Marsh Buggies, Inc., to enforce a Receipt, Release, Subrogation, and Agreement executed by Marsh in favor of Gulf South on May 8, 1981.
The agreement was executed for the purposes of resolving a dispute which had risen between Gulf South and Marsh as a result of Gulf South's payment of a check in the amount of $6,129.45 to Rodrigue after Marsh had issued a verbal stop payment order on the check.

FACTS:
On February 3, 1981, Marsh issued check no. 3439 for $6,129.45 to Rodrigue in payment of amounts due by Marsh for worker's compensation insurance coverage maintained by Rodrigue. On February 16, 1981, Marsh issued a verbal stop payment on check no. 3439 after being informed by Rodrigue that the check had not been received by it. Marsh then issued a second check to Rodrigue, check no. 3505, in the identical amount of $6,129.45, said check being issued as replacement of check no. 3439.
*258 Rodrigue eventually received and cashed check no. 3439 and check no. 3505. Although Marsh claimed that Rodrigue had been overpaid the amount of $6,129.45 by virtue of Gulf South's payment of both checks, Rodrigue refused to return any amounts to Marsh, claiming that the additional $6,129.45 was owed to it by Marsh.
As recited in the agreement, Gulf South paid Marsh $6,129.45 in consideration for which Marsh assumed alternative obligations contingent upon the results of a retrospective premium audit to be performed at the end of 1981 with respect to Marsh's worker's compensation insurance policy for the period from November, 1980 through November, 1981:
a. If the audit revealed that Rodrigue owed Marsh a premium refund in excess of $6,129.45, Marsh was obligated to direct Rodrigue to pay Gulf South the first $6,129.45 of the refund.
b. In the event that the premium refund owed by Rodrigue to Marsh was found to be less than $6,129.45, Marsh was obligated to direct Rodrigue to pay Gulf South the refund and Marsh further agreed to pay the difference between $6,129.45 and the refund to Gulf South.
c. In the event that the audit revealed that additional premiums were owed by Marsh to Rodrigue, Marsh agreed to pay Gulf South $6,129.45.
The agreement recited that Gulf South was to receive payment of $6,129.45 no later than January 31, 1982.
The affidavit of Herbert A. Rodrigue, attached to Rodrigue's motion for summary judgment, states that a retrospective premium audit was conducted of Marsh's worker's compensation insurance by Commercial Union for the period between November 1, 1980 through November 1, 1981. Upon receiving the results of the audit, Rodrigue credited Marsh's account with any return premium due and owing it. Marsh was, therefore, obligated by the agreement to pay Gulf South the full amount of $6,129.45 by January 31, 1982. Gulf South has never received any payment from Marsh in satisfaction of this obligation which became due and owing Gulf South by Marsh on January 31, 1982.
Suit was filed to enforce the agreement. Rodrigue filed a Motion for Summary Judgment with supporting affidavits. Gulf South also filed a Motion for Summary Judgment. Both motions contended that there are no genuine issues as to material fact and that they are entitled to judgment as a matter of law. Marsh did not file any opposition to either motion by way of affidavit or otherwise. The trial judge granted the summary judgment in favor of Rodrigue against Gulf South and in favor of Gulf South against Marsh. Marsh filed a Motion for New Trial which was denied by the trial court. Marsh appeals the summary judgment in favor of Gulf South and against Marsh.
As is pointed out in LSA-C.C.P. Article 967, and discussed in Delta National Bank of Yazoo City v. Holder, 398 So.2d 1072 (La.1981):
Code of Civil Procedure Article 967 further provides that once the Motion for Summary Judgment has been made and supported, an opponent may not simply rest on his pleadings but must come forth with a response setting forth specific facts showing that there is a genuine issue as to material fact.
This court is bound by what evidence is found in the record at the time the trial court rendered its judgment on such motion. Blount v. Exxon Corp., 395 So.2d 355 (La.App. 1st Cir.1981). Additionally, a summary judgment motion must be maintained as a matter of law if there is no creditable showing, either by evidence produced on original trial or affidavits, outlining what can be expected on new trial. Villavasso v. Lincoln Beach Corp., 146 So.2d 7 (La.App. 4th Cir.1962). Although an affidavit was filed with the motion for New Trial, there was no evidence produced at the original trial tending to show there was any genuine issue of material fact.
Furthermore, in Newman v. Burks, 442 So.2d 1274 (La.App. 4th Cir.1983), this Court held that since no counter-affidavits or receivable evidence tending to disprove *259 any facts were presented at the hearing, the court must conclude that there is no genuine issue of material fact.
From our review of the record at the time of the hearing, we cannot find any affidavits, depositions, or other similar documents in opposition to the motions for summary judgment. In light of the affidavit filed in support of the motion for summary judgment filed by Gulf South, and a copy of the Receipt, Release, Subrogation and Agreement, we can find no error on the part of the trial judge.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.