MEDICAL REVIEW PANEL      *      NO. 2020-CA-0522
PROCEEDINGS FOR THE
CLAIM OF RHODA TIMPTON      *

                COURT OF APPEAL

VERSUS      *

                FOURTH CIRCUIT

TOURO INFIRMARY AND DR.      *
RICHARD L. MEYER AND                 STATE OF LOUISIANA
ORTHOPAEDIC SPECIALISTS   * * * * * * *
OF NEW ORLEANS, APMC

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-12596, DIVISION "B-1"
Honorable Rachael Johnson,
* * * * * *
**Judge Terri F. Love**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Tiffany G. Chase)

Caleb H. Didriksen, III
Erin Bruce Saucier
Alex A. Lauricella
DIDRIKSEN SAUCIER WOODS & PICHON
3114 Canal Street
New Orleans, LA 70119

     COUNSEL FOR PLAINTIFF/APPELLANT, RHODA TIMPTON

Peter Elliot Sperling
John B. Cazale, V
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163-3600

     COUNSEL FOR DEFENDANTS/APPELLEES, RICHARD L. MEYER, JR., M.D. AND ORTHOPAEDIC SPECIALISTS OF NEW ORLEANS, APMC

                          **REVERSED AND REMANDED**
                             **FEBRUARY 10, 2021**

*TFL*

*EAL*

*TGC*

This appeal arises from the alleged medical malpractice suffered by plaintiff from a knee replacement surgery and subsequent treatment. Plaintiff experienced ongoing and increasing pain following the surgery and eventually treated with a new surgeon who performed a revision surgery. After the revision surgery, plaintiff was informed that her initial surgeon did not sufficiently attach the replacement components. She then filed a request for a medical review panel.

The defendants filed an exception of prescription in the trial court contending that the request for a medical review panel was untimely, as it was requested over three years after her initial surgery wherein the alleged medical malpractice took place. The plaintiff sought to compel the deposition of the treating doctor. However, the trial court denied the motion to compel, maintained the exception of prescription, and dismissed all of the plaintiff's claims with prejudice.

Plaintiff appeals, asserting that the doctrine of *contra non valentem* applies, such that the prescriptive periods for her claims had not yet run. The record before us is insufficient to determine whether plaintiff's claims were prescribed, as the plaintiff was prevented from conducting discovery to support her reliance on

1

*contra non valentem*. We find the trial court erred by denying plaintiff's motion to compel the deposition of the treating physician and by granting the exception of prescription. Thus, the matter is remanded to permit the plaintiff to conduct discovery.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On April 19, 2016, Rhoda Timpton underwent a right total knee arthroplasty performed by Dr. Richard Meyer, Jr. of Orthopaedic Specialists of New Orleans, APMC ("Ortho") at Touro Infirmary. Dr. Meyer implanted a "DePuy Attune" prosthetic knee replacement. Ms. Timpton began to experience increasing pain after her knee replacement and treated with Dr. Meyer until February 2, 2018. On September 24, 2018, Ms. Timpton underwent a right knee arthroplasty revision surgery performed by Dr. Lance Estrada. Dr. Estrada surmised that the prosthetic knee replacement from the initial surgery was "not securely attached" to Ms. Timpton's tibia.

On September 23, 2019, within a year of learning that the prosthetic knee replacement was not correctly attached in the initial surgery and within three years of her last treating visit with Dr. Meyer, Ms. Timpton filed a Request for a Medical Review Panel with the Louisiana Patient's Compensation Fund. She alleged medical negligence on the part of Dr. Meyer and Ortho ("Defendants") during her April 19, 2016 surgery. On December 5, 2019, Ortho filed a Petition for Discovery in the trial court. On December 18, 2019, Defendants filed an Exception of Prescription in the trial court[1] because Ms. Timpton's Request for a

---

[1] La. R.S. 40:1231.8(B)(2)(a) provides:
> A health care provider, against whom a claim has been filed under the provisions of this Part, may raise peremptory exceptions of no right of action pursuant to Code of Civil Procedure Article 927(6) or any exception or defenses

Medical Review Panel was filed more than three years after the date of her initial surgery.

The trial court stated during the hearing on the exception that it was deferring a ruling for forty-five days to give Ms. Timpton an opportunity to obtain her medical records from Dr. Meyer. As the PCF process had just begun, very little discovery had taken place.[2] The trial court's judgment provided that a ruling was deferred "permitting Plaintiff Rhonda Timpton, forty-five (45) days to obtain a copy of her medical records . . . to determine whether the 'Continuing Treatment Doctrine' would be applicable in this case to extend the prescriptive period in this matter beyond the applicable three (3) year prescriptive period pursuant to La. R.S. 9:5628(A)." The trial court also ordered supplemental memoranda.

Ms. Timpton received her medical records on February 24, 2020, and contended that the "records revealed inconsistencies that contradicted Plaintiff's recollection of her treatment." As a result, on April 8, 2020, Ms. Timpton filed a Motion to Compel the deposition of Dr. Meyer. On June 10, 2020, Touro filed an Exception of Prescription. The trial court conducted a second hearing on Defendants' Exception of Prescription and first hearing for the Motion to Compel. During the hearing, Ms. Timpton agreed to a voluntary partial dismissal of Touro. The trial court issued a judgment stating that Touro's Exception of Prescription was granted and dismissed Ms. Timpton's claims against Touro with prejudice.[3] The trial court then denied Ms. Timpton's Motion to Compel and granted

---

available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.

[2] Defendants' exception was filed approximately three months after the request for a medical review panel.

[3] Ms. Timpton discovered that Touro was not Dr. Meyer's employer.

Defendants' Exception of Prescription, dismissing all of Ms. Timpton's claims with prejudice. Ms. Timpton's Motion for Devolutive Appeal followed.

## STANDARD OF REVIEW

"A peremptory exception generally raises a purely legal question." *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 17-0413, p. 7 (La. App. 4 Cir. 11/15/17), 231 So. 3d 793, 799-800. "Nonetheless, evidence may be introduced in the trial court to support or controvert a peremptory exception of prescription." *Id.*, 17-0413, p. 7, 231 So. 3d at 800. Therefore, "[t]he standard of review of a trial court's ruling on a peremptory exception of prescription turns on whether evidence is introduced." *Id.*

"If evidence is introduced, the trial court's factual findings are reviewed for manifest error." *Russ v. City of New Orleans*, 19-0579, p. 2 (La. App. 4 Cir. 8/28/19), 279 So. 3d 1006, 1008, *writ not considered*, 19-01539 (La. 11/19/19), 282 So. 3d 1063, *reconsideration denied*, 19-01539 (La. 1/22/20), 291 So. 3d 1039. "When no evidence is introduced, the decision is purely legal and requires a *de novo* review." *Id.* "Under those circumstances, the exception is decided based on the facts alleged in the petition,[4] which are accepted as true." *Id.* (footnote added).

## PRESCRIPTION

Prescription is a peremptory exception. La. C.C.P. art. 927. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "The peremptory exception of prescription is a 'procedural device by which a defendant may obtain dismissal of the action

---

[4] Ms. Timpton had not yet had an opportunity to file a Petition for Damages.

4

because it is time-barred.'" *Felix v. Safeway Ins. Co.*, 15-0701, p. 4 (La. App. 4 Cir. 12/16/15), 183 So. 3d 627, 630 (quoting 1 Frank L. Maraist and Harry T. Lemmon, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE § 6.7 (1999)). "The party pleading the peremptory exception of prescription bears the burden of proving that the claim has prescribed." *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't*, 15-0860, p. 9 (La. App. 4 Cir. 12/2/15), 182 So. 3d 312, 319. "However, when the face of the petition reveals that a party's claim has prescribed, the burden shifts to the opponent to show why the claim has not prescribed." *Id.* "Similarly, the party who asserts the benefit of *contra non valentem* bears the burden of proving its requisite elements and applicability." *Id.*

"When deciding peremptory exceptions, including prescription, the court should resolve doubts by overruling the exception and giving the litigant its day in court." *Landry v. Blaise, Inc.*, 99-2617, p. 4 (La. App. 4 Cir. 8/2/00), 774 So. 2d 187, 190. "[U]nder Louisiana jurisprudence, prescriptive statutes are to be strictly construed in favor of the obligation sought to be extinguished, thereby allowing a plaintiff to proceed with the enforcement of a claim." *Crosby v. Sahuque Realty Co., Inc.*, 12-1537, p. 7 (La. App. 4 Cir. 8/21/13), 122 So. 3d 1197, 1202. Likewise, "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court." La. C.C.P. art. 934.

La. R.S. 9:5628(A) outlines the prescriptive periods for actions based on medical malpractice as follows:

> A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist,

5

hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

The Louisiana Supreme Court expounded upon La. R.S. 9:5628 thusly:

La.Rev.Stat. 9:5628 is a tripartite prescription provision.

First, a one-year prescription period (which parallels the general tort period) is the general rule, which applies to all types of medical malpractice actions. Under this general rule, such actions prescribe one year from the date of the alleged act, omission or neglect. This rule applies when the damages are immediately apparent.

Second, in cases involving damages that are not immediately apparent, a discovery exception to the general rule is codified. The discovery exception embodied in Section 5628 is a codification of the fourth category of *contra non valentem* for cases in which the cause of action is not immediately knowable. Under this discovery rule, such actions prescribe one year from the date of discovery of the alleged act, omission or neglect.

Third, an overall limitation is placed on cases otherwise falling within the discovery rule. That overall limitation is the underscored portion of Section 5628, which provides that "in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect." La.Rev.Stat. 9:5628 (emphasis supplied). Translated, this means that "the *contra non valentem* type of exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the alleged injury causing act, omission or neglect." *Boutte v. Jefferson Parish Hospital Service District No. 1*, 99-2402 at p. 5 (La.4/11/00), 759 So.2d 45, 49. "Superimposed upon [the discovery rule],

> however, is an overall limitation upon the discovery rule's operation to a period of three years from the date of the alleged act, omission or neglect." *Branch v. Willis–Knighton Medical Center*, 92-3086 at p. 17 (La.4/28/94), 636 So.2d 211, 216.

*In re Med. Review Panel for Claim of Moses*, 00-2643, pp. 7-9 (La. 5/25/01), 788 So. 2d 1173, 1178-79. Further, following *Moses*, the Louisiana Supreme Court stated:

> A straightforward reading of this statute clearly demonstrates the statute sets forth two prescriptive limits within which to bring a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission or neglect to bring such claims.

*Carter v. Haygood*, 04-0646, p. 10 (La. 1/19/05), 892 So. 2d 1261, 1268. Further, the Louisiana Supreme Court determined that both the one-year and three-year time periods are prescriptive rather than peremptive. *Borel v. Young*, 07-0419, p. 3 (La. 11/27/07), 989 So. 2d 42, *on reh'g* (July 1, 2008).

However, "[t]o soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit. *Carter*, 04-0646, p. 11, 892 So. 2d at 1268. "*Contra non valentem* is a Louisiana jurisprudential doctrine under which prescription may be suspended." *Id.* There are four general categories of *contra non valentem*:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself

7

of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Id.*, 04-0646, pp. 11-12, 892 So. 2d at 1268.

"The third category of *contra non* applies when the defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Id.*, 04-0646, p. 12, 892 So. 2d at 1269. "In certain circumstances, a doctor's continuing professional relationship with his patient might give rise to the suspension or interruption of prescription." *Id.* "This interruption or suspension of prescription by the continued existence of a professional relationship is based on the premise that the professional relationship is likely to hinder the patient's inclination to sue." *Id.* The *Carter* Court went on to outline the continuing treatment rule, which required:

> a plaintiff to establish the existence of (1) a continuing treatment relationship with the physician, which is more than perfunctory, during which (2) the physician engaged in conduct which served to prevent the patient from availing herself of her cause of action, such as attempting to rectify an alleged act of malpractice.

04-0646, p. 16, 892 So. 2d 1271.

The fourth category of *contra non valentem* is also known as the discovery rule. The Louisiana Supreme Court discussed the reasonableness of discovery as follows:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Percy v. State, E.A. Conway Memorial Hosp.*, 478 So.2d 570 (La.App. 2 Cir.1985). A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to

8

excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. *Ledet v. Miller*, 459 So.2d 202 (La.App. 3 Cir.1984), *writ denied*, 463 So.2d 603 (La.1985); *Bayonne v. Hartford Insurance Co.*, 353 So.2d 1051 (La.App. 2 Cir.1977); *Opelousas General Hospital v. Guillory*, 429 So.2d 550 (La.App. 3 Cir.1983). Nevertheless, a plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice. *Gunter v. Plauche*, 439 So.2d 437, 439 (La.1983). Even if a malpractice victim is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987). The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. *See Griffin*, 507 So.2d at 821.

*Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So. 2d 502, 510-11.

As outlined above, the application of the third or fourth category of *contra non valentem* is fact-intensive. The facts utilized to prove the applicability of *contra non valentem* are not required to be contained in the request for a medical review panel. "The difference between a request for review to initiate a panel proceeding and a petition to initiate a lawsuit was addressed by the Louisiana Supreme Court." *Miller v. Crescent City Health Care Ctr.*, 08-1347, p. 6 (La. App. 4 Cir. 5/28/09), 24 So. 3d 891, 895. "The claim is not required to be a fact pleading with the specificity that may be required of a petition in a lawsuit; rather, the claim need only present sufficient information for the panel to make a determination as to whether the defendant is entitled to the protection of the Act."

9

*Perritt v. Dona*, 02-2601, p. 13 (La. 7/2/03), 849 So. 2d 56, 65.

Ms. Timpton contended in her brief that:

> Dr. Meyer's continuing failure to discover (or failure to disclose that he had discovered) that the prosthetic that he placed in Ms. Timpton's knee was not securely attached to her tibia constituted a continuing tort until February 2, 2018 when she last saw Dr. Meyer (which on that date the knee was x-rayed and found to be arthritic despite a charted alleged absence of pain).

Further, Ms. Timpton stated that "[a]t the very least, the issues of when Plaintiff could have or should have known of the malpractice of Defendants is a fact-specific issue that should have been resolved after Plaintiff was allowed to conduct sufficient discovery." Ms. Timpton also outlined a few of the factual allegations as follows:

> In addition, as noted above, all of Defendants' post-surgery reports were not signed by Defendants until recently on December 17, 2019 (and all within the same hour of each other). Is it questionable that Defendants' post-surgery reports accurately reflect the entirety of the examinations. Plaintiff requested the depositions of Defendants to explain these questionable post-surgery reports, but Defendants refused to provide dates for the deposition of Dr. Meyer and the trial court denied Plaintiff's Motion to Compel Dr. Meyer's deposition. The trial court's decision to deny Plaintiff's Motion to Compel prevented Plaintiff from being able to use Dr. Meyer's won't testimony to defend against Dr. Meyer's Exception of Prescription as, at a minimum, Defendants' Exception should have been deferred until after Dr. Meyer's deposition was taken.

Conversely, Defendants stated that:

> Interestingly, Plaintiff never alleged in her PCF Complaint that Dr. Meyer's post-operative care was negligent in any manner. Yet, Plaintiff asserts in her appellate brief that Dr. Meyer failed to discover that the right knee prosthesis in question had been improperly implanted during the clinic visits between May 4, 2016 and February 2, 2018, thereby creating a continuous tort on Dr. Meyer's part from the April 19, 2016 surgery to

10

the very last post-operative clinic visit on February 2, 2018.

> However, the notion that the "continuing tort" theory applies to medical malpractice cases is simply misplaced, putting aside the fact that Plaintiff never alleged that Dr. Meyer's post-operative care following the April 19, 2016 total knee arthroplasty was negligent in her PCF Complaint.

As to the Motion to Compel Dr. Meyer's deposition, Defendants averred that:

> a deposition to seek information regarding any supposed missing information and/or obtain an understanding of the documented information in Dr. Meyer's clinic notes involving the findings and results of any examinations performed by Dr. Meyer on these particular dates is irrelevant and has no direct bearing on whether Plaintiff's medical malpractice claim is prescribed in this matter.

The case *sub judice* presents a very unique set of facts and circumstances wherein we are called upon to determine if the trial court correctly granted Defendants' Exception of Prescription even though we only have the letter requesting a medical review panel, no Petition has been filed, and little to no discovery has occurred. Further, the trial court denied Ms. Timpton's Motion to Compel Dr. Meyer's deposition, preventing her from conducting discovery to bolster her assertions of the applicability of *contra non valentem*.[5]

Our review reveals that there is insufficient evidence to determine whether Ms. Timpton's claims have prescribed based on the doctrine of *contra non valentem*. While Ms. Timpton bore the burden once her complaint was prescribed on its face, she was prevented from possibly meeting that burden by the lack of discovery. We note that Defendants filed the Exception of Prescription three months after Ms. Timpton submitted her request for a medical review panel.

---

[5] The high importance of the plaintiff's right to acquire the treating physician's deposition during the medical review panel stage of proceedings was addressed by this Court in *In re Med. Review Panel of Hughes*, 01-2313 (La. App. 4 Cir. 1/23/02), 807 So. 2d 1074.

11

Further, we recognize that Ms. Timpton did not receive a copy of her own medical records from Dr. Meyer until the trial court held the first hearing on the exception and ordered the production of same.

Accordingly, we find that the trial court erred by denying Ms. Timpton's Motion to Compel the deposition of Dr. Meyer.[6] The judgment of the trial court is reversed. The matter is remanded to allow Ms. Timpton to conduct further discovery and proceed accordingly.

### *DECREE*

For the above-mentioned reasons, we find that the trial court erred by denying Ms. Timpton's Motion to Compel and by finding that her claims were prescribed. We reverse the judgment of the trial court and remand to permit Ms. Timpton to proceed.

**REVERSED AND REMANDED**

---

[6] Defendants contend that Ms. Timpton cannot attack the correctness of the Motion to Compel judgment. However, "[w]hen a judgment is rendered in the case which is appealable, the reviewing court can then consider the correctness of the prior interlocutory judgment." *People of the Living God v. Chantilly Corp.*, 251 La. 943, 947-48, 207 So. 2d 752, 753 (1968). Additionally, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La. C.C.P. art. 2164.